USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1065 PAUL FERRAGAMO, Plaintiff - Appellant, v. CHUBB LIFE INSURANCE COMPANY OF AMERICA, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morris E. Lasker, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Barbadoro,* District Judge. ______________ _____________________ Maria A. Luise, with whom Frank Mondano and Balliro & ________________ ______________ _________ Mondano were on brief for appellant. _______ Paul M. Sanford, with whom Medeiros Karmen & Sanford Inc. _______________ ________________________________ was on brief for appellee. ____________________ September 3, 1996 ____________________  ____________________ * Of the District of New Hampshire, sitting by designation. Per Curiam. On December 14, 1981, appellant Paul Per Curiam ___________ Ferragamo ("Ferragamo") was insured by United Life and Accident Insurance Company ("United Life") pursuant to a policy which entitled Ferragamo to benefit payments in the event of his total disability.2 At that time he owned and operated Northshore Recycling, a scrap metal recycling business. Shortly thereafter, Ferragamo submitted a claim for total disability benefits based on an accident suffered while at work which caused severe injuries to his left leg and ankle. As required by the policy, he proceeded to file monthly reports regarding his injury. Relying on these reports and the information contained therein establishing that Ferragamo remained totally disabled and was not working for pay or profit, appellee Chubb Life Insurance Company of America ("Chubb"), United Life's successor, paid Ferragamo total disability benefits of $2,400 per month from April 1982 until June 1993,3 as well as social insurance benefits of $750 per month over the initial five year period of his claim. Chubb also waived the further payment of premiums pursuant to a policy provision. Although the monthly reports requested detailed information from Ferragamo regarding the nature of any work  ____________________ 2 We present the facts in the light most favorable to the jury's verdict. See, e.g., Coastal Fuels of P.R., Inc. v. Caribbean ___ ____ _____________________________ _________ Petroleum Corp., 79 F.3d 182, 186, petition for cert. filed, 65 _______________ _________________________ U.S.L.W. 3034 (July 2, 1996). 3 The disputed period is limited to the period after January 1988. -2- activities,4 he continuously represented that he was not working or earning any income other than "investment income."5 During the course of Ferragamo's eleven- year claimed disability, Chubb attempted to verify the nature of his disability in a variety of ways including telephone contacts, personal interviews, reviewing his income tax returns, independent medical evaluations, and by "spot-checks" of Ferragamo's activities by private investigators. These efforts eventually revealed that, while Ferragamo was claiming total disability, he was actually engaging in numerous and varied physical and work activities, including playing racquetball with his trial lawyer, signing public records under oath to the effect that he was working as a builder, filing federal income tax returns where he stated under oath that he received significant profits from his real estate development business, operating a construction company known as Ferragamo Development which purchased, developed, and sold over $10,000,000 in real estate, and disclosing to various persons, including his doctors, creditors, banks and various town officers, that he was a self-employed real estate developer, contractor or builder earning from $100,000 to $250,000 per year. To mention only some of the discovered evidence, Ferragamo fully developed a  ____________________ 4 The inquiries included questions regarding his occupation and duties, whether he was self-employed, whether he had returned to work on either a part-time or full-time basis, what his daily activities consisted of, the amount of his monthly income, and whether he was partially or totally disabled. 5 Ferragamo signed each report below the statement that: "I certify that the foregoing statements and answers are complete and true to the best of my knowledge." -3- $6,000,000 condominium complex in Swampscott, Massachusetts, where he would be at the job site almost continuously each day from 7:00-7:30 AM to 4:00-5:00 PM. He not only drove his pick-up truck to work, but at times operated a front-end loader and climbed down inside the newly dug foundation holes to check them out. He was also fully active in all aspects of the planning, financing, supervision and sale of this project. In addition to the Swampscott condominium, during the time of his alleged total disability Ferragamo also engaged in various land transactions including those involving a 340 acre tract in Littleton, New Hampshire, two lots in North Andover, Massachusetts, two in Salem, and others in Lynnfield, Peabody, Revere, and Swampscott, as well as at Chuebeque Island, Maine. Predictably upon learning the above, Chubb stopped disability payments under the policy, and incredibly, Ferragamo sued seeking damages for breach of contract, negligence, unfair and deceptive trade practices pursuant to Mass. Gen. L. ch. 93, negligent infliction of emotional distress, and intentional infliction of emotional distress. Chubb denied these allegations and counterclaimed alleging fraud, deceit and negligent misrepresentation. A trial was held at which the above facts were presented to the jury. At the close of plaintiff's case Chubb moved for judgment pursuant to Fed. R. Civ. P. 50, which motion was denied by the district court on all counts except regarding Chapter 93A, on which ruling was reserved. Thereafter, at the -4- close of the evidence, Chubb renewed the Rule 50 motion, with similar results. The jury found for Chubb on all counts including on Chubb's counterclaim in the amount of $192,401.71. Pursuant to special interrogatories the jury ruled that Chubb had not breached the policy contract, that Ferragamo engaged in misrepresentations regarding his claim, and that after January 1988, he engaged in fraud in this respect. The district court then dismissed Ferragamo's chapter 93A claim. Ferragamo raised three issues on appeal which under the circumstances of this case border on the frivolous: (1) the admission into evidence of the investigator's reports which Chubb relied on in suspending Ferragamo's benefits; (2) the limiting of the cross-examination of Chubb's expert; and (3) the instructions given to the jury regarding the deceit count of Chubb's counterclaim. The challenged reports were clearly admissible within the discretion of the trial court, see Sinai v. New England Tel & ___ _____ _________________ Tel. Co., 3 F.3d 471, 475 (1st Cir. 1993), cert. denied, ___ U.S. ________ ____________ ___, 115 S. Ct. 597 (1994), because they were relevant to the issue of whether Chubb had reasonably investigated Ferragamo's eligibility for benefits before terminating them. See Teishing ___ ________ v. SER-Jobs For Progress, Inc., 19 F.3d 755, 762 (1st Cir. 1994). ___________________________ This question was put at issue not only by the nature of Ferragamo's claim, but also by the door that was opened by his counsel in the direct examination of his own expert witness. Sinai, 3 F.3d at 475-76. Furthermore, considering the copious _____ -5- independent evidence heard by the jury regarding Ferragamo's activities, any error committed is at best harmless. See Almonte ___ _______ v. National Union Fire Ins. Co., 787 F.2d 763, 771 (1st Cir. _____________________________ 1986). A trial court's discretion in limiting the conduct of a trial, although not limitless, is certainly ample enough to allow the curbing of the cross-examination of Chubb's expert under the circumstances of this trial. See Fed. R. Evid. 611(b) (noting ___ that "cross examination should be limited to the subject matter of direct examination"). On direct examination Chubb's expert testified regarding its insurance practices in August 1993, when Chubb suspended Ferragamo's insurance benefits. He also testified regarding the reasonableness of Chubb's actions as to the period of time that lapsed from the time the investigative reports were received to the suspension of the benefits. Ferragamo's lawyer extensively fished outside these waters before the trial court properly ended the expedition. Finally, in regard to the claim that the district court erred in its jury instructions, it is beyond reasonable dispute that Ferragamo did not make these objections after the charge was given but before the jury retired to deliberate. It is elementary that the failure to object to a jury charge after it is given and before the jury retires to deliberate, is fatal to any claim of error on appeal. Fed. R. Civ. P. 51; Scarfo v. ______ Cabletron Sys., Inc., 54 F.3d 931, 940 (1st Cir. 1995). While _____________________ there are extraordinary exceptions to this black-letter rule, -6- see, e.g., id., such is not the present case. Thus, we dwell no ___ ____ ___ longer on this or any other alleged error. We can perceive no appealable error by the district court. In fact the record shows actions by appellant for which he could very well be held accountable before another forum. Considering the totally meritless nature of this appeal, appellant is hereby ordered to show cause within 10 days from the issuance of this decision why he should not be held to pay double costs and attorney's fees on appeal. See 28 U.S.C. 1919 ___ (1994); Fed. R. App. P. 38; Cronin v. Town of Amesbury, 81 F.3d ______ ________________ 257, 261 (1st Cir. 1996). The decision of the district court is affirmed. ________ -7-