USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1823 ERNEST P. O'CONNOR, JR., Plaintiff - Appellee, v. DEBORAH HUARD, Defendant - Appellant. ____________________ No. 96-1824 ERNEST P. O'CONNOR, JR., Plaintiff - Appellant, v. DEBORAH HUARD, Defendant - Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, _____________________ and Stahl, Circuit Judge. _____________ _____________________ William R. Fisher, with whom Ivy L. Frignoca and Monaghan, __________________ ________________ _________ Leahy, Hochadel & Libby were on brief for Deborah Huard. _______________________ William C. Knowles, with whom Jacqueline W. Rider and ____________________ _____________________ Verrill & Dana were on brief for Ernest P. O'Connor, Jr. ______________ ____________________ June 27, 1997 ____________________ -2- TORRUELLA, Chief Judge. On March 15, 1994, Plaintiff- TORRUELLA, Chief Judge. ___________ Appellee-Cross-Appellant Ernest P. O'Connor, Jr. ("O'Connor"), who was a pretrial detainee at the Kennebec County Jail ("the Jail") during all times relevant to the case, brought this Section 1983 suit for compensatory and punitive damages and declaratory relief against Alfred Cichon ("Cichon"), a physician's assistant at the Jail, and Catherine Mesaric ("Mesaric") and Appellant-Cross-Appellee Deborah Huard ("Huard"), Corrections Sergeants at the Jail. O'Connor contended that, while he was being held as a pretrial detainee, Cichon deprived him of medical attention, which amounted to cruel and unusual punishment, and that he was punished in violation of his due process rights under the Fourteenth Amendment. On January 20, 1996, summary judgment was granted in Cichon's favor. Prior to trial, Mesaric was dismissed from the suit. The case against Huard was tried before a jury in June 1996. At the close of O'Connor's case, Huard moved for a directed verdict. The district court took the motion under advisement. At the close of all evidence, Huard renewed her motion, which the district court denied. The jury returned a verdict in O'Connor's favor, finding that Huard had violated his Fourteenth Amendment due process rights, and awarding him one dollar in compensatory damages. The court then instructed the jury on punitive damages, which the jury, after deliberating, declined to award. Huard filed a motion for judgment notwithstanding the verdict and a motion for a new trial, which -3- the district court denied. Huard appeals the district court's jury instructions, the denial of her motion for judgment notwithstanding the verdict, and the award of attorney's fees to O'Connor. O'Connor cross-appeals the jury's refusal to grant him actual compensatory and punitive damages. We affirm. BACKGROUND BACKGROUND On review of a jury verdict, we recite the facts in the light most favorable to that verdict. See Ferragamo v. Chubb ___ _________ _____ Life Ins. Co., 94 F.3d 26, 27 n.1 (1st Cir. 1996). Huard was a _____________ Corrections Sergeant at the Jail during all times relevant to this case. O'Connor was initially incarcerated in the Jail for a brief period in January 1993. On January 18, 1993, O'Connor told Huard that "he needed his medication." She instructed him to fill out a Medical Request form, and when he did so, she forwarded the form to the Medical Department. Pursuant to his request, O'Connor met with the Jail's physician's assistant, Cichon, for a medical evaluation. O'Connor asked Cichon for Xanax or Valium to treat anxiety. Cichon diagnosed O'Connor as suffering from "anxiety disorder," for which he prescribed Xanax. Soon thereafter, O'Connor was released from the Jail. On October 30, 1993, O'Connor was placed in pretrial detention at the Jail, where he remained for approximately six months. O'Connor again submitted a request for medication, which Cichon now denied, because he could not verify O'Connor's medical history, believed that O'Connor did not suffer from an anxiety disorder, and wasconcerned about O'Connor's history ofdrug abuse. -4- During this detention, an animosity developed between Huard and O'Connor, eventually leading to daily verbal confrontations. O'Connor called Huard names that evidenced O'Connor's disdain for what he believed was Huard's sexual orientation. Huard, in turn, called O'Connor "a scumbag, a low- life, a dirtbag, a drug addict, creep." Huard taunted O'Connor about his failure to get the medication he desired and his inability to cope without it. O'Connor would react to these taunts by kicking doors and banging the bars of his cell and by hurling verbal abuse at Huard. As a result of these actions, O'Connor would be removed from his cell and placed in administrative lockdown. Frequently, during these administrative lockdowns, the other inmates on the cell block would be restricted to their cells. By the time he was transferred from the Jail, O'Connor had spent 33 days in lockdown. DISCUSSION DISCUSSION I. Jury instructions I. Jury instructions Huard argues that the magistrate's instructions to the jury did not properly reflect the elements O'Connor was required to prove in order to succeed on his Fourteenth Amendment claim. In reviewing assertions of error in the jury charge, we determine whether the instructions adequately reflect the law applicable to the controlling issues without tending to confuse or mislead the jury. See United States v. Fulmer, 108 F.3d 1486, 1494 (1st Cir. ___ _____________ ______ 1997). The instructions to the jury were as follows: -5- Plaintiff claims that his constitutional rights were violated when defendant deliberately provoked him into rage attacks and then disciplined him for his resulting outbursts. Specifically, his allegation is that he was punished without due process of law, in violation of his rights under the 5th and 14th Amendments to the United States Constitution. At the time of his incarceration at the Kennebec County Jail plaintiff was a pretrial detainee. In other words, he had not been convicted of a crime, but was being held pending trial. Under such circumstances, plaintiff could only be subjected to the restrictions and conditions of the detention facilities so long as those conditions and restrictions did not amount to punishment. Not all restrictions and conditions during pretrial detention amount to punishment in the constitutional sense, however. Once the government has exercised its authority to detain a person pending trial, it may obviously impose conditions or restrictions necessary to effectuate the legitimate goals of maintaining institutional security and ensuring the detained person's presence at trial. The question for you to decide is whether defendant imposed conditions or restrictions upon plaintiff that were reasonably related to those legitimate goals or whether they were arbitrary or without purpose. Absent a showing of an expressed intent on defendant's part to punish plaintiff, that question will generally turn on whether the conditions or restrictions could have been used for a legitimate purpose and whether they are excessive in relation to that legitimate purpose. If you find the conditions or restrictions were arbitrary or without purpose, you may infer that the purpose of the conditions or restrictions was punishment, and, therefore, unconstitutional. Trial Transcript, vol. III, at 440-41. -6- These instructions accurately reflect the law as it relates to a pretrial detainee's claim of punishment in violation of the Due Process Clause. The government may detain one accused of a crime prior to trial in order to ensure his presence at trial. See Bell v. Wolfish, 441 U.S. 520, 536 (1979). Prior to ___ ____ _______ an adjudication of guilt, however, a state government may not punish a pretrial detainee without contravening the Fourteenth Amendment's Due Process Clause. See id. at 535. The government ___ ___ may, however, impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention, see id. ___ ___ at 537, and that maintain security and order in the detention facility, see id. at 536. When confronted with a charge by a ___ ___ pretrial detainee alleging punishment without due process, the "court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. ___ Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Id. at 538-39. The government has a valid interest in managing ___ the detention facility and, toward that end, may employ administrative measures that may be discomforting or are of a nature that the detainee would not experience if he were released -7- while awaiting trial. See id. at 540. Barring "substantial ___ ___ evidence" that an administrative measure is an exaggerated response to these considerations, "courts should ordinarily defer to their expert judgment in such matters." Id. at 540 n.23. ___ Huard's claim of error addresses a conceptually different issue. Huard argues that the magistrate's instructions were erroneous because they failed to incorporate the appropriate standard, which she contends is the Eighth Amendment "deliberate indifference" standard applied when a pretrial detainee alleges a denial of appropriate medical care. Huard's contention misconceives the claim at issue in this case. O'Connor's allegation as it related to Huard was that she intentionally provoked or incited him into "rage attacks" by relentlessly taunting him. O'Connor claimed that Huard engaged in such actions so that she could subsequently discipline him by imposing "administrative lock down." Given the nature of O'Connor's claim, the magistrate was correct in denying Huard's request to incorporate "deliberate indifference" instructions into the jury charge. We emphasize that nothing in the resolution of this case or in this opinion is meant to suggest that a detention facility may not discipline a pretrial detainee who violates the facility's administrative regulations employed to maintain order and security. O'Connor's challenge was not that the Kennebec County Jail's system of allowing a pretrial detainee's discipline following a violation of its administrative regulations was -8- suspect, but rather that Huard's intention was to punish O'Connor and her provocative or instigative actions were directed toward this end. Thus, the ability of a detention facility to reasonably discipline detainees who violate rules is not implicated by the issues presented in this case, in which a jury found that Huard's acts were tantamount to arbitrary and unreasonable punishment. II. Qualified immunity II. Qualified immunity In her motions for directed verdict, both at the close of O'Connor's case and at the close of all the evidence, Huard argued that she was entitled to judgment as a matter of law based on the merits of O'Connor's claim. In her motion for judgment notwithstanding the verdict, she again argued entitlement to judgment as a matter of law on the merits and also raised, for the first time, the defense of qualified immunity as a ground entitling her to judgment as a matter of law. Federal Rule of Procedure 50(b) specifies that a party, having submitted a motion for a directed verdict may, after the verdict and entry of judgment, "move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict[.]" Fed. R. Civ. P. 50(b). A party may not raise a ground for judgment notwithstanding the verdict that was not previously presented to the trial court in a motion for directed verdict. See Systemized ___ __________ of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1035 (1st Cir. ____________________ _________ 1984) ("A party may not base its motion for a judgment n.o.v. on -9- a ground that was not argued in its motion for a directed verdict."). "The last opportunity to raise [qualified immunity] is by motion for directed verdict." Lewis v. Kendrick, 944 F.2d _____ ________ 949, 953 (1st Cir. 1991) (applying Systemized of New England, ___________________________ Inc. in the qualified immunity context). ____ Having failed to properly preserve her qualified immunity claim, Huard can prevail only upon a finding of plain error. See Lewis, 944 F.2d at 953. "The fact that [Huard] lost ___ _____ a very possible defense that would have eliminated liability for fees is not enough; plain error requires much more." Id. Huard ___ never brought forward any evidence suggesting that her actions were objectively reasonable in light of O'Connor's clearly established due process right. Instead, she denied that she had acted as O'Connor alleged. Because there was no evidence in the record to support a finding of qualified immunity, the district court's denial of her motion was not plain error. Accordingly, we affirm the district court's denial of Huard's motion for judgment notwithstanding the verdict. III. Attorney's fees III. Attorney's fees On November 13, 1996, the district court entered an order granting O'Connor attorney's fees pursuant to 42 U.S.C.  1988. The court essentially reasoned that, although O'Connor received only nominal damages of one dollar, the jury had granted the relief at the heart of O'Connor's claim by barring Huard's actions in violation of his due process rights. -10- Huard argues that we should reverse the order because O'Connor is not entitled to attorney's fees. She contends that under Farrar v. Hobby, 506 U.S. 103 (1992), although O'Connor is ______ _____ properly characterized as the prevailing party, the award of only nominal damages highlights O'Connor's failure to prove actual, compensable damages. Having failed to obtain compensatory relief, Huard appears to contend that O'Connor's success in this case was technical or de minimis. We cannot agree. __________ Although the Farrar Court reversed the grant of ______ attorney's fees to a civil rights plaintiff because the plaintiff's success was de minimis when compared to the outcome __________ and relief sought, the Court's opinion did not impose a per se _______ rule that a prevailing plaintiff who is awarded only nominal damages is not entitled to fees. To the contrary, the Court's opinion instructed district courts, in which discretion rests to grant attorney's fees to civil rights plaintiffs, see 42 U.S.C.  ___ 1988 ("In any action or proceeding to enforce a provision of section[] . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."), that in exercising their discretion they should consider the reasonableness of an award of fees in light of the "'relationship between the extent of success and the amount of the fee award.'" Farrar, 506 U.S. at 115-16 (quoting ______ Hensley v. Eckerhart, 461 U.S. 424, 438 (1983)); see also Wilcox _______ _________ ________ ______ v. City of Reno, 42 F.3d 550, 554 (9th Cir. 1994) (noting that _____________ "Farrar establishes that a district court should give primary ______ -11- consideration to the degree of success achieved when it decides whether to award attorney's fees," and affirming a grant of $66,535 in fees on award of one dollar in nominal damages), cited _____ with approval in Krewson v. Town of Quincy, 74 F.3d 15, 17 (1st _________________ _______ _______________ Cir. 1996). Here, the district court recognized several important factors warranting the grant of attorney's fees. First, the district court's order recognized the importance of providing an incentive to attorneys to represent litigants, such as O'Connor, who seek to vindicate constitutional rights but whose claim may not result in substantial monetary compensation. Second -- and worth noting in light of the Farrar Court's emphasis on the fact ______ that Farrar sought only compensatory damages in the amount of $17 million and ultimately received one dollar from each defendant -- the most basic remedy O'Connor sought in this case was relief from Huard's infliction of punishment without due process of law. Third, the court underscored the deterrent impact of this litigation, which will prevent "future abuses of the rights of pretrial detainees." Fourth, the court deducted from the requested amount for fees hours related solely to the two defendants who were not part of the trial, hours spent in excess of that reasonably required of a task, hours spent researching inapplicable areas of law, and hours inadequately explained or detailed. Based on the appropriateness of all of these considerations, we find that the district court's grant of attorney's fees was within its discretion. -12- IV. O'Connor's claim regarding damages IV. O'Connor's claim regarding damages On cross-appeal, O'Connor appears to argue, for the first time, that the jury's failure to award him punitive and compensatory, rather than only nominal, damages was unreasonable. The short answer to O'Connor's contention is that the issue should have been raised before the district court in a motion for a judgment notwithstanding the verdict or a motion for new trial. We generally will not review a party's contention that the damages award is excessive or insufficient where the party has failed to allow the district court to rule on the matter. See ___ Carlton v. H.C. Price Co., 640 F.2d 573, 577 (5th Cir. 1981) (no _______ ______________ appellate review of allegedly excessive or inadequate damages was available where trial court was not given the opportunity to exercise its discretion on the matter), cited with approval in _______________________ Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors, 850 ________________________ _______________________________ F.2d 803, 811 (1st Cir. 1988); Braunstein v. Massachusetts Bank & __________ ____________________ Trust Co., 443 F.2d 1281, 1285 (1st Cir. 1971) (denying review of _________ claim that award was excessive because appellant failed to raise the issue before the district court). More importantly, however, we find that the jury was not unreasonable in failing to award O'Connor compensatory or punitive damages. O'Connor put forward evidence of damages related to his mental and emotional suffering endured as a result of Huard's actions, and did not present any evidence of economic damages. Assuming the jury was properly instructed on the issue of damages, and O'Connor does not challenge the instructions on -13- appeal, the jury could reasonably have believed that O'Connor did not suffer a compensable harm. See Davet v. Maccarone, 973 F.2d ___ _____ _________ 22, 27-28 (1st Cir. 1992). Additionally, O'Connor appears to argue that Huard's actions registered such malicious intent, reckless disregard, or callous indifference to O'Connor's constitutional rights that the jury was unreasonable in failing to award him punitive damages. Our review of the record indicates "that the evidence does not 'point so strongly and overwhelmingly in favor of the movant [plaintiff] that a reasonably jury could not have arrived at [its] conclusion.'" Id. at 30 (quoting Chedd-Angier Prod. Co. v. ___ ______________________ Omni Publications Int'l, Ltd., 756 F.2d 930, 934 (1st Cir. _______________________________ 1985)). Accordingly, we will not disturb the jury's determination that punitive damages were not warranted in light of the facts of this case. See id. ___ ___ CONCLUSION CONCLUSION For the foregoing reasons, we affirm. affirm ______ -14-