Jackson OKOT, and Cicilia Joseph,
on Behalf of Minor Akim
CARLO, Plaintiffs,

v.

Joseph CONICELLI, an individual and
governmental officer, in his individual
and official capacities, the City of
Portland, and the Portland Police De-
partment, Defendants.

No. CIV.99–254–P–C.

United States District Court,
D. Maine.

Jan. 18, 2002.

Harold J. Friedman, Sally Morris, Esq., L. John Topchik, Esq., Catherine Miller, Esq., Friedman, Gaythwaite, Wolf & Leavitt, Portland, ME, James Michael Stovall, Esq., Scarborough, ME, for Plaintiffs.

Paul F. Macri, John E. Sedgewick, Berman & Simmons, P.A., Lewiston, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER ON MOTION FOR ATTORNEYS' FEES

GENE CARTER, District Judge.

Plaintiffs Jackson Okot and Akim Carlo, having respectively obtained jury verdicts for $501 in compensatory damages and $1 in nominal damages in a trial against Defendant Joseph Conicelli, a former police officer with the Portland Police Department, now seek attorneys' fees under 42 U.S.C. § 1988(b) in the amount of $85,168 and expenses in the amount of $3,077. *See* Docket No. 32. For the reasons that follow, the Court will grant Plaintiffs' motion for attorneys' fees, with reductions to reflect Plaintiffs' partial success and reasonable litigation practices.

### BACKGROUND

This case arose out of an arrest of Plaintiffs by Defendant Conicelli that occurred on May 25, 1998. Plaintiffs initially filed a thirteen-count Complaint against Defendant Conicelli in his individual and official capacities, the Portland Police Depart-

ment, and the City of Portland. *See* Complaint (Doc. No. 1). In their Complaint, Plaintiffs alleged that Defendant Conicelli had violated 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682 by using unlawful search and seizure tactics, unlawfully arresting them, using excessive force in arresting them, and discriminating against them on the basis of their race in violation of their federally protected rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article I §§ 5 and 6–A of the Maine Constitution. *See id.* at Counts I, III, V. Plaintiffs also alleged that the City of Portland and the Portland Police Department had violated 42 U.S.C. § 1983 and 5 M.R.S.A. § 4682 by failing to adequately hire, supervise, and train Conicelli and by failing to adequately investigate his conduct towards Plaintiffs on the night of May 25, 1998. *See id.* at Counts II, IV, VI. Plaintiffs' Complaint also contained counts for assault, battery, false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress against all Defendants, and a claim under 15 M.R.S.A. § 704 against all Defendants. *See id.* at Counts VII, VIII, IX, X, XI, XII. Plaintiffs alleged physical and emotional pain and suffering, mental and emotional distress, embarrassment, and humiliation, for which they requested compensatory and punitive damages.

Prior to trial, Plaintiffs dropped all claims against Defendants the City of Portland and the Portland Police Department, as well as their race discrimination claims against Defendant Conicelli, *see* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (Doc. No. 9) at 1 n. 1; Recommended Decision on Defendants' Motion for Summary Judgment (Doc. No. 17) at 6 n. 4, and the Court, therefore, issued summary judgment against Plaintiffs on these counts. *See* Order Affirming the Recommended Deci-

sion of the Magistrate Judge (Doc. No. 20). The Court denied summary judgment with respect to Defendant Conicelli's defense of qualified immunity. *See id.* During trial and prior to the close of Plaintiffs' case, Plaintiffs withdrew their claim for punitive damages, and all state law claims were dropped. Hence, the sole issue presented to the jury was whether Defendant Conicelli should be held liable for violating Plaintiffs' constitutional rights by unlawfully detaining them, falsely arresting them, and using excessive force against them on the night of May 25, 1998. The jury found that Conicelli had violated both Plaintiffs' constitutional rights, and it awarded Plaintiff Okot $501 in compensatory damages and Plaintiff Carlo $1 in nominal damages.

## DISCUSSION

42 U.S.C. § 1988 provides that in a § 1983 action such as Plaintiffs', a "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Plaintiffs have moved for attorneys' fees in the amount of $85,168 and expenses in the amount of $3,077. Defendants oppose Plaintiffs' motion for attorneys' fees on a number of grounds. First, Defendants argue that neither Plaintiff qualifies as a prevailing party under 42 U.S.C. § 1988(b). Second, Defendants argue that Plaintiffs' requested fees are unreasonable in that Attorney Millers's hourly rate of $145 is excessive, Plaintiffs seek compensation for an excessive number of hours and an unwarranted number of attorneys to perform various tasks, and Plaintiffs have requested fees for time spent pursuing claims on which they did not succeed and strategies that were abandoned prior to trial. Defendants also challenge Plaintiffs' submission of costs as unreasonable and ask the Court to reduce any fees that it decides to award to

account for what Defendants assert is Plaintiffs' failure to exercise billing judgment in submission of the fees petition now before the Court.

## A. Plaintiffs' Status as Prevailing Parties

■ In determining whether a party qualifies for attorneys' fees under 42 U.S.C.1988, a court must determine whether a party is a prevailing party within the meaning of the statute and whether the requested fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct., 1933, 1939, 76 L.Ed.2d 40 (1983). Under the Supreme Court's "generous formulation of the term," a party who has obtained "at least some relief on the merits of his claim" is a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). This formulation includes a party who has received an award of nominal damages. *See id.* at 113–14, 113 S.Ct. at 574. Hence, in this case, both Okot and Carlo are prevailing parties within the meaning of 42 U.S.C. § 1988.[1]

## B. The Reasonableness of the Submitted Fees

■ The Court's determination that Plaintiffs are prevailing parties does not automatically entitle Plaintiffs to all fees that they have requested. The Court must also determine whether Plaintiffs' requested fees award is reasonable. This analysis generally begins with a lodestar calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. In making the lodestar calculation, a court considers the prevailing rates in the community for attorneys with similar experience and qualifications to those for whom fees have been requested, as well as whether fees have been requested for "duplicative, unproductive, or excessive hours." *Gay Officers Action League et al. v. Commonwealth of Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001). In determining the reasonableness of Plaintiffs' submitted time, a court may reduce a fee award to exclude "hours inadequately explained or detailed." *O'Connor v. Huard*, 117 F.3d 12, 18 (1st Cir.1997); *see also Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 8 (1st Cir.1993). A court also "may bring to bear its knowledge and experience concerning both the cost of attorneys in its market area and the time demands of the particular case." *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984). Ultimately, the party requesting fees bears the burden of establishing the reasonableness of the rates and hours submitted in a fees petition. *See Weinberger v. Great Northern Nekoosa Corp.*, 801 F.Supp. 804, 807 (D.Me.1992), *aff'd*, 47 F.3d 463 (1995).

■ Several other factors also inform a court's determination regarding the reasonableness of requested fees, including the degree of success obtained in the litigation. *See Hensley*, 461 U.S. at 435–37, 103 S.Ct. at 1940–41.[2] The determination

---

1. Defendants have spent a considerable portion of their brief arguing that Plaintiff Carlo was not a prevailing party within the meaning of § 1988. This argument is based on an erroneous characterization of the jury's verdict with regard to Plaintiff Carlo, in that Defendants contend that Carlo was not awarded nominal damages. *See* Opposition to Plaintiffs' Application for Attorney's Fees

(Doc. No. 37). Carlo was awarded nominal damages. *See* Jury Verdict (Doc. No. 26); Amended Judgment (Doc. No. 38).

2. In *Hensley*, the Supreme Court enumerated a list of twelve factors that may also inform a court's reasonableness analysis:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)

of degree of success is a significant factor in a court's evaluation of a fees petition, *see id.*, and it is measured in light of "a plaintiff's success claim by claim, ... the relief actually achieved, [and] the societal importance of the right which has been vindicated." *See Coutin v. Young and Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 338 (1st Cir.1997). In cases in which a party has succeeded on only some claims, a court should exercise its judgment to ensure that parties do not recover for work expended on unsuccessful claims, but also to ensure that parties are not penalized for raising alternative legal arguments in good faith. *See Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Hence, a party who establishes that claims on which that party did not prevail are based on "a common core of facts" or "related legal theories" to those claims on which the party did prevail may receive complete compensation for the work pertaining to such facts or theories. *Lipsett v. Blanco*, 975 F.2d 934, 940–41 (1st Cir.1992). Once a prevailing party establishes the interrelatedness of the facts and theories, it becomes the opposing party's burden to establish a basis for segregating the hours spent on the successful and unsuccessful claims. *See id.* However, in "massaging" the lodestar to account for partial success, a district court should bear in mind that the Supreme Court has instructed that " '[w]here recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.' " *Farrar*, 506 U.S. at 114, 113 S.Ct. at 575 (quoting *Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring)). Nevertheless, a rule of automatic and strict proportionality between the recovery obtained and a fees award has been flatly rejected by the Supreme Court and the Court of Appeals for the First Circuit. *See Coutin*, 124 F.3d at 339–40 (quoting *Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694); *see also id.* at 585, 106 S.Ct. at 2699–700 (Powell, J., concurring). Additionally, the degree of success plays a role in nominal damages, as the Supreme Court has indicated that in cases in which a party has "recover[ed] only nominal damages because of his failure to prove an essential element of his claim for monetary relief, ... the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115, 113 S.Ct. at 576 (citation omitted). In determining whether to completely deny fees in a nominal damages case, a Court may consider the significance of the legal issue on which the party prevailed and the public import of the litigation. *See id.* at 120–22, 113 S.Ct. at 578–79 (O'Connor, J., concurring); *cf. O'Connor*, 117 F.3d at 18 (endorsing district court's consideration of deterrent impact of litigation in determining reasonableness of fees award).

While the lodestar method is "the most useful starting point for determining the amount of a reasonable fee," *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939, the lodestar method is not required in all cases. In cases in which nominal damages have been

---

the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3, 103 S.Ct. at 1938 n. 3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

obtained and in cases in which "a plaintiff's victory is purely technical or *de minimus,* a district court need not go through the usual complexities involved in calculating attorney's fees." *Farrar,* 506 U.S. at 117, 113 S.Ct. at 576 (O'Connor, J., concurring) (emphasis in original). However, the lodestar method remains the preferred method for making a fees award determination and "spurning all consideration of a lodestar places a substantial burden upon the district court to account for its actions." *Coutin,* 124 F.3d at 338.

■ In this case, Plaintiffs prevailed on only one of thirteen claims against only one of three Defendants, for which Plaintiff Okot was awarded $501 in compensatory damages and Plaintiff Carlo was awarded $1 in nominal damages. Plaintiffs maintain that although this success may seem minimal or technical from a numerical point of view, the claim on which they prevailed, a § 1983 claim rooted in Fourth Amendment violations, was the central thrust of their overall case and thus represents a significant victory on the merits. Plaintiffs contend that given the nonpecuniary nature of the damages they suffered, the limited monetary amount of the judgment neither negates nor undermines their victory. Plaintiffs also maintain that they have achieved an important public goal in this litigation by sending a message to the Portland Police Department and the City of Portland that "you cannot detain a suspect and haul him into the police station without probable cause and you cannot slam a suspect's face into the sidewalk during a search, even if you think you are dealing with a potentially explosive racial incident." Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Petition for Attorneys' Fees (Doc. No. 41) at 7. Defendants dispute Plaintiffs' characterization of their victory, noting that the race discrimination claims, deemed central to the case by Plaintiffs, were withdrawn during the summary judgment phase of the litigation. Defendants also contend that Plaintiffs' decisions not to seek declaratory or injunctive relief, to withdraw their claim against the institutional Defendants during the summary judgment phase of the litigation, and to withdraw their claim for punitive damages in the middle of trial, as well as their settlement positions throughout the pretrial phases of the case belie Plaintiffs' assertion that the case was intended to, and did, achieve important public goals. Plaintiffs reply that even after they withdrew their race discrimination claims, race continued to play an important role in trial, in that the admission of Defendant Conicelli's racial statements convincingly explained to the jury the motivation underlying his actions. Additionally, Plaintiffs insist that because the City of Portland is indemnifying Conicelli, the judgment entered against him will alter the relationship between the Portland Police Department and the public.

The Court regards the legal issue on which Plaintiffs prevailed was one of the central issues in the case and believes that the jury's verdict that Defendant Conicelli violated both Plaintiffs' constitutional rights does have the potential to send a message of significant social implications to the Portland Police Department and the City of Portland. For this reason, the Court believes that it would be inappropriate to completely forego the lodestar calculation in this case, despite its apparent authority to do so. However, the Court agrees with Defendants that Plaintiffs' success in this case was only partial and that, given the demonstrated priority of monetary relief exhibited by Plaintiffs throughout the litigation, from the time they filed their complaint, throughout the settlement negotiations, up until the time that they withdrew their claim for punitive damages, it is " 'obligated to give primary

consideration to the amount of damages awarded as compared to the amount sought.'" *Farrar*, 506 U.S. at 114, 113 S.Ct. at 575 (quoting *Riverside*, 477 U.S. at 585, 106 S.Ct. at 2700 (Powell, J., concurring)). The Court is not convinced by Plaintiffs' attempt to characterize the purpose of this litigation as serving significant public goals. Unlike the plaintiffs in *Rivera*, Plaintiffs did not seek injunctive or declaratory relief. Unlike the plaintiff in *O'Connor*, Plaintiffs did not seek declaratory relief and did not present their claim for punitive damages to the jury.[3] Indeed, Plaintiffs withdrew virtually every single claim designed to serve broader public goals and withdrew the claims against the Defendants most empowered to alter the relationship between the Portland Police Department and the citizens of Portland—the City of Portland and the Portland Police Department itself. The Court found this strategy puzzling throughout the course of the litigation and is now confounded by Plaintiffs' assertion that, despite their withdrawal of all institutional claims and their claim for punitive damages, this litigation served to accomplish significant public goals. Plaintiffs' partial success and limited monetary relief in light of the demonstrated goals of their litigation will play a significant role in the Court's assessment of the reasonableness of their fees petition.

The Court will account for Plaintiffs' limited success in two ways. First, in considering the itemized lodestar arguments raised by Defendants, the Court will consider whether to reduce the time allocated to specific tasks to account for Plaintiffs' partial success. In making these determinations, the Court will bear in mind the interrelatedness of several of the factual bases and legal theories underlying Plaintiffs' claims and consider whether Plaintiffs' billing sufficiently indicates the interrelatedness of the claims underlying the work billed, as well as whether Defendants have set forth a sufficient basis for segregability.[4] Second, the Court will consider, after completion of the lodestar calculation, whether further reduction of the fees award is appropriate to reflect the limited success of Plaintiffs' case.

### 1. Hourly Rates

■ Plaintiffs' submitted fees request accounts for work performed by three attorneys at the law firm of Friedman Babcock & Gaythwaite: Harold Friedman, Sally A. Morris, and Catherine Miller; one paralegal at the firm, Kristy Tracy; and the lawyer who worked on the case prior to the firm's retention of the case, James Michael Stovall. *See* Declaration of Harold J. Friedman (Doc. No. 33). Plaintiffs have billed at hourly rates of $200 for Attorney Friedman, $145 for Attorneys Morris and Miller, $100 for Attorney Sto-

---

**3.** If anything, the Court views the instant case as similar to *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1190–92 (1st Cir. 1996), in which the Court of Appeals upheld a federal district court's decision to significantly reduce a fees award in light of the plaintiff's limited degree of success and the district court judge's conclusion that three of the five claims were frivolous. Although Plaintiffs argue that this case presents similar issues to those presented in *Domegan v. Ponte*, 972 F.2d 401 (1st Cir.1992), that decision was vacated by the Supreme Court and remanded to the Court of Appeals for further consider-

ation in light of the Supreme Court's decision in *Farrar*. *See Ponte v. Domegan*, 507 U.S. 956, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993).

**4.** The Court is not persuaded by Defendants' argument that all general tasks should be divided by two in order to reflect that only Plaintiff Okot prevailed in this case. Not only does this suggested approach rest on shaky, if any, legal precedent, but, as the Court has already indicated, Plaintiff Carlo also prevailed in this case.

vall, and $65 for Paralegal Tracy. *See id.* Defendants do not contest the hourly rates for Attorneys Friedman, Morris, and Stovall, but Defendants do object to the $145 hourly rate for Attorney Miller, maintaining that an hourly rate of $100 better accounts for Attorney Miller's lack of any documented litigation experience and limited number of years in the legal profession.

■ Prevailing rates in the community determine the reasonable hourly rate. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 954 (1st Cir.1984). Attorney Miller graduated from law school and was admitted to the Maine bar in 1997. *See* Friedman Declaration ¶ 6. She practices in both Maine and New Hampshire federal and state courts. *See id.* Attorney Friedman declares that Attorney Miller has experience in civil rights litigation, but does not detail the nature of this experience. *See id.* Although Plaintiffs have submitted three other declarations by attorneys generally attesting that the hourly rates charged by Friedman, Babcock & Gaythwaite are consistent with prevailing market conditions in Portland, *see* Declaration of David G. Webbert (Doc. No. 34); Declaration of Richard L. O'Meara (Doc. No. 35); Declaration of Sally Morris (Doc. No. 40), Plaintiffs do not submit any document explaining why it is reasonable to charge the same rate for Attorney Miller as that for Attorney Morris, who has been practicing law since 1992 and who has extensive, documented experience litigating civil rights cases. *See* Declaration of Sally Morris ¶¶ 2–4. Nor do Plaintiffs explain why the work of Attorney Miller should be billed at a rate higher than that of Attorney Stovall, who was also admitted to the Maine bar in 1997. *See* Friedman Declaration ¶ 7. The Court regards an hourly rate of $145 as excessive for Attorney Miller and it will, therefore, reduce her hourly rate to $100.

### 2. Paralegal Fees

■ Defendants dispute the reasonableness of any compensation for work performed by Paralegal Tracy. Plaintiffs argue that they are entitled to compensation for reasonable paralegal time, citing *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), and *Lipsett v. Blanco,* 975 F.2d 934 (1st Cir.1992). Plaintiffs argue that two reasons justify compensation for paralegal time: prevailing market practices and efficiency. Defendants argue that Plaintiffs should not receive compensation for time spent by paralegals, stating that the relevant precedent does not mandate the inclusion of such fees and that this Court has previously held that " 'such charges are properly includable in firm overhead.' " *See* Opposition Motion at 12 (citing *Weinberger,* 801 F.Supp. at 823).

This Court has previously expressed its view that charges for the work of paralegals "are properly included in firm overhead" and that, "[t]o the extent that paralegals are allowed to perform work that constitutes 'the practice of law' under Maine law, such practice is inconsistent with Maine law." *Weinberger,* 801 F.Supp. at 823. The Court continues to regard 4 M.R.S.A. § 807(1) as prohibiting the recovery of attorneys' fees for work done by paralegals that involves the legal judgment and analysis constituting the practice of law. Although the Court of Appeals for the First Circuit did affirm a district court's decision to grant fees for paralegal times in *Lipsett,* it did not hold that such fees were not required, and it did not address the unauthorized practice of law issue and the overhead inclusion rationale that have consistently motivated this Court's decisions to deny compensation for paralegal fees. The documentation submitted by Plaintiffs fails to distill

tasks performed by Paralegal Tracy that do not involve the type of legal judgment properly performed by lawyers or that are not properly accounted for in firm overhead. The Court, therefore, will not award any attorneys' fees for the work that she performed.

### 3. Reasonableness of Hours Charged to Complete Tasks

██ First, Defendants challenge the amount of time Plaintiffs spent drafting the Complaint. Defendants assert that Plaintiffs' bill reflects 26.8 hours dedicated to preparing the Complaint and argue that a single attorney should have been able to draft the Complaint in two to three hours. The Court's review of Plaintiffs' bill has led it to conclude that Plaintiffs have charged 23.7 hours for the initial preparation of this case leading up to the filing of the Complaint, including charges for time spent interviewing Plaintiffs, researching potential claims, and drafting the Complaint. Six and two-tenths hours of work were clearly dedicated to Plaintiffs' unsuccessful state law claims, and the Court will strike those hours from the bill. Of the remaining 17.5 hours, 2.5 were spent conducting initial client interviews and communicating with Attorney Stovall about the work that he had already performed in relation to the case. The Court believes that the 2.5 hours spent on this initial interview activity were reasonable and it will, therefore, grant Plaintiffs' fee petition with regard to these charges. The Court agrees with Defendants that Plaintiffs have submitted charges for an unreasonable amount of time, 15 hours, for the general drafting and research of the Complaint, particularly in light of the fact that Plaintiffs prevailed on only one of the thir-

teen counts set forth in the Complaint. Plaintiffs' petition fails to adequately detail much of the initial research in a manner that convinces the Court that the time spent researching the unsuccessful and successful claims cannot be segregated. The Court will, therefore, reduce the amount of hours for which Plaintiffs can recover fees for this task to 5 hours: 2.5 hours at Attorney Miller's rate; 2 hours at Attorney Morris's rate; and .5 hours at Attorney Friedman's rate.

██ Defendants dispute the reasonableness of Plaintiffs' billing for a number of discovery-related activities. Defendants contend that Plaintiffs' billing of 4.5 hours for discovery planning activities is unreasonable,[5] insisting that experienced lawyers should immediately know that discovery will involve requesting the production of documents, deposing key figures, and sending interrogatories to the key parties in the case. The Court does not view 4.5 hours of discovery planning activities as unreasonable, and it will not reduce those charges. Defendants also contest Plaintiffs' submission of charges for 46.6 hours of general discovery, highlighting that most of the time billed by Plaintiffs was not dedicated to preparing for or conducting depositions, but, instead, was dedicated to drafting and reviewing general discovery material. Upon review of the petition, the Court agrees with Defendants that 46.6 hours of general discovery activity is unreasonable. The Court will reduce Plaintiffs' charges for general discovery activities to 30 hours: 7 hours at Attorney Friedman's hourly rate; 3 hours at Attorney Morris's hourly rate; and 20 hours at Attorney Miller's hourly rate. Additionally, Defendants challenge Plaintiffs' charges of 9 hours of activity relating to the depo-

---

**5.** Although Defendants assert that Plaintiffs submitted charges for 5.5 hours of discovery planning activity, the Court's review of the record leads it to conclude that Plaintiffs have actually billed for 4.5 hours of discovery planning activity.

sition of Plaintiff Okot, arguing that the bill indicates duplicative effort, that the deposition lasted only 1.5 hours, and that a reasonable attorney would have spent only an additional 3 hours preparing for the deposition.[6] The Court does not regard 9 hours of activity preparing a key witness who is a Plaintiff to be unreasonable. The Court will, therefore, allow Plaintiffs to recover attorneys' fees for this activity. Similarly, the Court will grant Plaintiffs' fee petition with regard to the 2.4 hours of activity dedicated to the deposition of Plaintiff Carlo. Defendants also argue that Plaintiffs' billing of 5 hours for the deposition of Defendants' expert, Professor Greg Connor, is excessive and based on duplicative efforts by two lawyers.[7] The Court does not view the 5 hours dedicated to deposing Professor Connor as excessive, particularly in light of the fact that 2.5 of those hours were spent actually deposing Professor Connors. Finally, Defendants argue that because two attorneys attended the deposition of Defendant Conicelli, the Court should strike Attorney Miller's November 14, 1999, time entry of 3.0 hours for this activity. Plaintiffs reply that although two attorneys attended the deposition of Conicelli, the second attorney's time has been cut from the petition. The Court will not strike Attorney Miller's work charges relating to the deposition of Defendant Conicelli.

■ Third, Defendants argue that Plaintiffs should not be compensated for the 5 hours spent on settlement-related activity, insisting that because Plaintiffs' settlement position was unreasonable, the time Plaintiffs spent preparing for settlement conferences and considering settlement was unreasonable. The Court views 5 hours of settlement activity as reasonable, and, therefore, it will not strike these charges from Plaintiffs' bill.

■ Fourth, Defendants challenge the reasonableness of the time Plaintiffs' attorneys spent preparing the summary judgment motion in this case. Although Defendants assert that Plaintiffs seek 111 hours spent on work pertaining to summary judgment, the Court regards Plaintiffs' bill as indicating that they spent 100.1 hours preparing for summary judgment. Defendants argue that it should have taken Plaintiffs' counsel twenty hours to work on the part of the summary judgment motion on which they prevailed. Plaintiffs respond that they did not brief the issues that were decided against them on summary judgment. The Court initially notes that 3.9 of the hours charged for Plaintiffs' work in connection with summary judgment pertain to Defendants' interlocutory appeal of the Court's ruling. The Court regards Plaintiffs' attempt to defend a favorable ruling as reasonable, and it will, therefore, grant Plaintiffs' fee petition with regard to those hours. As for the remaining 96.2 hours, the Court agrees with Defendants that Plaintiffs' bill is unreasonably high. Particularly in light of the fact that Plaintiffs dedicated most of their opposition to Defendants' summary judgment motion to one issue of qualified immunity, the Court believes that twenty-five hours constitutes a reasonable time for this task. Moreover, although Plaintiffs did prevail

6. The Court notes that the time entries for Attorney Friedman for the dates of November 14 and 15 do not break down the amount of time Attorney Friedman specifically spent working on the deposition of Okot. The Court has reduced Attorney Friedman's time by half for these dates.

7. Defendants assert that Plaintiffs have billed for 5.8 hours of activity relating to the deposition of Connors. The Court does not regard the 0.8 hours charged for work conducted by Attorney Friedman as pertaining to the deposition of Professor Connors.

on the major claim they continued to pursue in their response to Defendants' Motion for Summary Judgment, the fees petition does not clearly indicate the nature of Plaintiffs' legal research or drafting for all hours billed, thus making it impossible for the Court to determine whether the attorneys' activity pertained to the common factual bases underlying Plaintiffs' claims or to common legal theories pertaining to Plaintiffs' successful and unsuccessful claims.

■ Fifth, Defendants challenge the reasonableness of the time spent drafting the pretrial memorandum. Plaintiff has billed 7.3 hours for the drafting of this memorandum. Defendants argue that this should have taken one hour. The Court agrees. This item should be compensated for at Attorney Morris's hourly rate of $145.

■ Sixth, Defendants argue that Plaintiffs' request for compensation of 166 hours of trial preparation is unreasonable in that it reflects duplicative efforts between lawyers and paralegals and between the lawyers, and that it was inefficient. Defendants argue that an experienced attorney with a part-time assistant should have been able to prepare for trial in 40 hours. Defendants also argue that Plaintiffs' submission of a bill for 68.7 hours of time spent handling the three-day trial is unreasonable, and that Plaintiffs should be compensated no more than 36 hours for the three-day trial.

The Court finds that 50 hours is a reasonable allocation of time to trial preparation, in light of the result obtained, and that 30 hours is a reasonable allocation of time to the actual trial. This reduction is made on the basis of the Court's judgment in respect to reasonable efficiency of counsel applied to the designated tasks without wasteful duplication. Finally, the Court thinks it appropriate for Plaintiffs to be compensated for this time, allocable to various attorneys, at an average composite rate of $125 per hour with a reduction of 25% to reflect the somewhat limited extent of success at trial, or $7,500.

■ Seventh, Defendants challenge the 26 hours that Plaintiffs have billed for assembling the fee petition. Defendants argue that this should have been accomplished within three to four hours, particularly given the efficiency of modern computer billing methods. The Court agrees that Plaintiffs have billed for an excessive amount of time, and it regards 4 hours as a reasonable amount of time for the preparation of the fee petition, at Attorney Morris's hourly rate.

■ Eighth, Defendants argue that the 2.1 hours dedicated by members of the firm of Friedman Babcock & Gaythwaite to making phone calls to Attorney Stovall reflects a failure to exercise billing judgment and should, therefore, be reduced. Defendants also argue that Plaintiffs should not receive any compensation for the time spent by Attorney Stovall walking them through the Portland Police Department internal affairs investigation, the federal grand jury investigation, and the state criminal process. Defendants argue that the bulk of the 15.75 hours billed by Attorney Stovall constitutes such activity. Plaintiffs explain in their fees petition that Attorney Stovall worked on this case before the firm of Friedman Babcock & Gaythwaite, and that he filed notices and conducted witness interviews; but Plaintiffs do not reply to Defendants' charge that the time that Stovall dedicated to the grand jury and the state criminal process did not pertain to the instant case. In the absence of information regarding the pertinence of the work of Attorney Stovall to the claim on which they prevailed, the Court will not award attorneys' fees for

the hours charged by him. The Court regards the telephone conversations between Attorney Stovall and the attorneys who ultimately worked on the instant case as sufficient to reasonably account for the work he had performed that contributed to Plaintiffs' success in the instant case. The Court will, therefore, deny Plaintiffs' fees application with regard to the hours billed by Attorney Stovall, and it will grant the application with regard to the hours dedicated by other attorneys to consulting with Attorney Stovall about the case.

### 4. Time Spent Searching for an Expert and Consulting Potential Experts

 Defendants also insist that Plaintiffs should not be compensated for time spent searching for an expert and consulting with potential experts because Plaintiffs did not ultimately use an expert in trying the case. Plaintiffs' bill includes 11.1 hours spent consulting with and searching for potential experts.[8] The Court recognizes that a search for an expert is a reasonable aspect of trial preparation in a civil rights case and that Plaintiffs' consultation with potential experts may have played a role in shaping Plaintiffs' strategy with regard to the claim on which they ultimately prevailed. However, given Plaintiffs' decision not to use an expert at trial, the Court regards charges for 10.4 hours as excessive. The Court will, therefore, reduce Plaintiffs' charges for expert-related tasks to 4 hours: 3 hours at Attorney Millers' rate; 0.5 hours at Attorney Morris's rate; and 0.5 hours at Attorney Friedman's rate.

### 5. Reasonableness of Costs

 Defendants challenge the reasonableness of the costs in this case, arguing that $1,426.35 in photocopying costs oc-

curred on June 30, 2000, seven days after the trial, and that the remaining $1,137.95 photocopying costs are also excessive. The Court agrees with Defendants that the photocopying costs incurred after trial were unreasonable, and it will strike those costs from Plaintiffs' award. The Court also agrees that the other photocopying costs of $1,137.95 are excessive, and it will, therefore, reduce this amount by half. Defendants have not opposed the other costs submitted by Plaintiffs, which total $460.74, and the Court will grant these costs. Given these reductions, Plaintiffs will be awarded costs of $1029.72.

### 6. Further "Massaging" of the Lodestar to Account for Plaintiffs' Partial Success

Defendants argue that because Carlo was not a prevailing party, all work that has not been attributed to a certain Plaintiff's claims be reduced by 50%. The Court will not do that because Carlo was a prevailing party and, in any event, reducing the fees by 50% would not render a realistic assessment of the amount of time taken to research the prevailing claims in the case, given the factual and legal overlap.

### C. Defendants' Request for a Downward Reduction

Maintaining that Plaintiffs failed to exercise billing judgment in their decision to include time spent pursuing their cases against the City and the Police Department in their billing records even though the claims against the latter two were dropped by Plaintiffs at the summary judgment phase. Defendants cite *Lewis v. Kendrick*, 944 F.2d 949 (1st Cir.1991), as authority for the Court's discretion to re-

---

**8.** Defendants allege that Plaintiffs dedicated 10.3 hours to this activity. The Court regards

Attorney Friedman's charges on December 13, 1999, as also relating to this activity.

duce fees on this ground. Plaintiffs argue that they have exercised billing judgment by cutting all of Attorney Wolf's time from the case, as well as by cutting fees incurred by Attorney Wolf and Attorney Topchik, who assisted Attorney Morris while she was on maternity leave during discovery, even though these attorneys spent time performing productive discovery tasks. Particularly in light of the complexities of the fee petition now before the Court, the Court does not regard Plaintiffs' fee petition as demonstrating a failure to exercise billing judgment. The Court, therefore, will not reduce Plaintiffs' fees on this ground.

## CONCLUSION

In consideration of the Plaintiffs' partial success in this case and the parties' arguments pertaining to the reasonableness of Plaintiffs' fees, the Court has decided to **GRANT** Plaintiffs' request for an attorneys' fees award but to **REDUCE** the award claimed by Sixty–Four Thousand One Hundred Fifty–Nine Dollars ($64,-159.00) to compensate Plaintiffs for only the activities reasonably dedicated toward achieving their partial success against Defendant Conicelli. Accordingly, the Court **ORDERS** that Defendants pay Plaintiffs an amount of Twenty–One Thousand Nine Dollars and Twenty–Two Cents ($21,-009.22) in attorneys' fees and One Thousand Twenty–Nine Dollars ($1,029.00) in costs.