# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Board of Supervisors            :
of Willistown Township           :    No. 1434 C.D. 2015
                                 :         1456 C.D. 2015
             v.                :         1460 C.D. 2015
                                 :         1549 C.D. 2015
Main Line Gardens, Inc.         :         1573 C.D. 2015
and Coffman Associates, LLC    :        1574 C.D. 2015
                 Appellants    :   Argued: April 10, 2018

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Judge

**OPINION**
**BY JUDGE SIMPSON**             **FILED: May 9, 2018**

These six consolidated appeals return to this Court following our Supreme Court's remand in Board of Supervisors of Willistown Township v. Main Line Gardens, Inc., 155 A.3d 39 (Pa. 2017) (Main Line Gardens II). In Main Line Gardens II, the Supreme Court determined a single judge of this Court erred in dismissing the appeals filed by Main Line Gardens, Inc. and Coffman Associates, LLC (collectively, Main Line) following the Court of Common Pleas of Chester County's[1] (trial court) entry of judgment against Main Line in six zoning enforcement actions filed by the Willistown Township Board of Supervisors (Township). A single judge of this Court dismissed Main Line's appeals based on its failure to file briefs in support of its post-trial motions in the trial court. Our Supreme Court reversed and remanded to this Court for review of the merits of the issues raised in Main Line's underlying appeals.

---

[1] The Honorable Robert J. Shenkin, S.J., presided.

As to the merits, Main Line primarily argues the trial court erred in determining Main Line waived the issue of *res judicata*, which, it asserts, bars the Township's enforcement actions. Main Line also contends the trial court erred in awarding attorney fees to the Township. Upon review, we affirm.

## I. Background

In April 2011, the Township issued Main Line a zoning enforcement notice, which indicated that Main Line's garden center use did not comply with the terms of a prior conditional use decision as well as the Willistown Township Zoning Ordinance of 1981 (zoning ordinance). Relevant here, the Township alleged continuing violations by Main Line related to the dumping, storing, transferring, or processing of tree waste in the form of wood chips, in violation of Section 139-146(B) of the zoning ordinance. Main Line appealed the enforcement notice to the Zoning Hearing Board of Willistown Township (ZHB), which, after hearings, determined Main Line was in violation of the zoning ordinance and prior conditional use approval. The trial court upheld the ZHB's decision, as modified, and this Court affirmed. Thereafter, the Supreme Court denied Main Line's petition for allowance of appeal.

To enforce the ZHB's determination, in August 2013, the Township filed seven civil complaint enforcement actions against Main Line in magisterial district court for *per diem* violations of the zoning ordinance. Each complaint sought *per diem* violations for specific 12-day periods because, based on the jurisdictional limit of the magisterial district court ($12,000 per action), the Township had to file seven separate actions seeking discrete 12-day periods of violations in each, separate action. A hearing ensued before a magisterial district judge.

2

Ultimately, the magisterial district court issued separate notices of judgment against Main Line in the amount of $6,143 on each of the seven complaints, for a total judgment of $43,001. Main Line appealed the seven magisterial district court judgments to the trial court, and the Township filed complaints against Main Line in each of the seven actions. In each complaint, the Township sought the imposition of *per diem* fines for the period of May 23, 2012, to August 14, 2013.[2]

In May 2014, after civil arbitrations in the seven actions, an arbitration panel entered an award in favor of the Township in one of the seven actions in the amount of $21,274.67, and in favor of Main Line in the remaining six actions. The Township entered judgment on the arbitrators' award in the one case decided in its favor, and it filed notices of appeal in the other six cases, which then proceeded before the trial court *de novo*. See Pa. R.C.P. No. 1311(a).

Prior to trial, Main Line filed motions for summary judgment in the six remaining actions. In supporting briefs filed in each case, Main Line argued that *res judicata* barred the Township from offering proof of damages because the arbitrators rendered a decision on damages (in the first case decided in favor of the Township) for the entire 84-day period alleged in that case, and that case was a final judgment because the Township did not appeal that decision.

---

[2] The August 14, 2013 end date was a typographical error; the Township intended to seek imposition of *per diem* fines from May 23, 2012 through August 14, 2012. Reproduced Record (R.R.) at 527a.

3

In response, the Township filed a motion for leave to amend its complaints in the six actions to set forth the distinct 12-day periods set forth in the complaints it filed in the magisterial district court. Main Line filed responsive briefs, arguing against amendment based on *res judicata*. The Township also filed cross-motions for summary judgment with supporting briefs in the six cases, offering its own *res judicata* argument, namely that the doctrine should bar Main Line from contesting the arbitrators' factual findings relating to its zoning ordinance violations in the case decided in favor of the Township as Main Line did not appeal that decision. Main Line filed responses and supporting briefs to the Township's cross-motions for summary judgment, offering further argument on the application of *res judicata* under the existing procedural posture of the six cases.

Thereafter, the trial court denied all of the motions and cross-motions for summary judgment. At the outset of a non-jury trial, over Main Line's objections based on *res judicata*, the trial court granted the Township's motion to amend its six complaints.[3] The trial court acknowledged Main Line's *res judicata* and collateral estoppel objections, and the trial court provided the parties an opportunity to argue those issues.

After the non-jury trial, the trial court ruled in favor of the Township in all six actions in the amount of $15,200 in each case (for a total of $91,200). In a footnote to the first of its six orders, the trial court indicated that Main Line did not properly raise *res judicata* as a defense in the six actions because it did not raise the defense in its pleadings. Specifically, the trial court stated:

---

[3] Despite having been granted leave to do so, the docket sheets do not reflect that the Township filed amended complaints.

Not having been pled, [Main Line's] reliance on the defense of *res judicata* is unavailing. Had that defense been pled, [the Township] could have taken the appropriate steps to separate each of the causes of action. Further, the actual violations have been proven with sufficient specificity, the burden being on the [Township] to demonstrate the violations but only by a preponderance of the evidence and we impose a fine of $100 per day. In addition, [the Township] is entitled to recover its reasonable and appropriate attorney's fees and costs, Borough of Bradford Woods v. Platts, 799 A.2d 984 (Pa. Cmwlth. 2002), but [the Township] also has the burden of proof as to those damages. In this and the related cases, it was difficult to ascertain the appropriate amount to be awarded but we are satisfied that the amounts awarded in this and the related cases (we divided the awardable costs and fees equally among the cases) are sufficiently supported by the evidence.

Reproduced Record (R.R.) at 535a.

Main Line filed timely post-trial motions in each of the six cases. However, it did not file briefs in support of its post-trial motions. The trial court subsequently entered six separate orders denying Main Line's post-trial motions, and it entered six separate judgments against Main Line.

Main Line filed six notices of appeal from the six separate judgments entered in the trial court.[4] The trial court directed Main Line to file concise statements of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did.

---

[4] In addition, the Township filed six separate notices of cross-appeal to this Court from the six separate judgments entered by the trial court, which were consolidated with Main Line's appeals. The Township subsequently discontinued its cross-appeals.

The trial court subsequently issued an opinion pursuant to Pa. R.A.P. 1925(a).  In its opinion, the trial court explained that Main Line first asserted that the trial court erred in finding Main Line did not avail itself of the defense of *res judicata*.  The trial court stated Main Line was correct in that assertion, but the trial court's error in deeming the defense of *res judiciata* waived was harmless because, on the merits, the defense did not apply here.

To that end, the trial court stated, the doctrine of *res judicata* precludes an action where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and, (4) identity of the capacity of the parties suing or being sued.  In re Iulo, 766 A.2d 335 (Pa. 2001); see also Daley v. A.W. Chesterton, Inc., 37 A.3d 1175 (Pa. 2012).  Here, the trial court stated, each of the seven suits the Township filed related to different time periods; therefore, the requisite identities were not present.

Next, the trial court stated, Main Line's second argument was that the trial court erred in permitting amendment of the six complaints that proceeded to trial.  The trial court explained Main Line's argument on this point depended on its first argument, that the claims in the six complaints were barred by *res judicata*.  However, the trial court stated, as noted above, each of the seven complaints covered a distinct time period; therefore, *res judicata* did not apply.

Finally, the trial court stated, Main Line argued that the trial court erred in awarding attorney fees where the evidence the Township presented commingled

allowable fees with those that were not recoverable. The trial court explained that Main Line was correct that the evidence did not clearly differentiate the fees incurred for each of the applicable 12-day periods. However, the trial court stated, based on the evidence presented, it was able to make a determination with reasonable accuracy and without impermissible speculation.[5]

For these reasons, the trial court opined that this Court should affirm the trial court's order denying Main Line's post-trial motions.[6]

Before this Court, the Township filed an application to dismiss Main Line's appeals based on its failure to file briefs in support of its post-trial motions in

---

[5] The trial court explained, "under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." E.C. Ernst, Inc. v. Koppers Co., 626 F.2d 324, 327 (3d Cir. 1980). "Although the law does not command mathematical precision from evidence in finding damages, sufficient facts must be introduced so that the court can arrive at an intelligent estimate without conjecture. Rochez Bros., Inc. v. Rhoades, 527 F.2d 891, [895] (3d Cir. 1975) cert. den. [425 U.S. 993 (1976)]. Where the amount of damage can be fairly estimated from the evidence, the recovery will be sustained even though such amount cannot be determined with entire accuracy. [Mass. Bonding & Ins. Co. v. Johnston & Harder, 22 A.2d 709 (Pa. 1941)]. It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss. Myer Feinstein Co. v. DeVincent, [30 A.2d 221 (Pa. Super. 1943)]; [Am. Air Filter Co., Inc. v. McNichol, 527 F.2d 1297 (3d Cir. 1975)]; G.C.S., Inc. v. Foster Wheeler Corp., 437 F. Supp. 757 (W.D. Pa. 1975)." Delahanty v. First Pa. Bank, N.A., 464 A.2d 1243, 1257-58 (Pa. Super. 1983). "A plaintiff must provide information to allow the [fact-finder] to calculate damages without engaging in speculation. Bolus v. United Penn Bank, 525 A.2d 1215, 1226 (Pa. Super. 1987). Damages need not be proven with mathematical certainty. Id. The determination of the amount of damages is for the [fact-finder], and a reviewing court must give deference to the [fact-finder's] determination. [Delahanty]." A. Scott Enters., Inc. v. City of Allentown, 102 A.3d 1060, 1070 (Pa. Cmwlth. 2014), rev'd on other grounds, 142 A.3d 779 (Pa. 2016).

[6] The trial court further stated that the sole issue raised by the Township in its cross-appeals was that the trial court erred in not awarding the full amount claimed as damages in fines, attorney fees and costs. The trial court rejected this assertion. As stated in footnote 4, the Township discontinued its cross-appeals in this matter; therefore, this issue is not before us in this appeal.

the trial court. Relying on a Superior Court decision,[7] a single judge of this Court agreed that Main Line's failure to file briefs in support of its post-trial motions resulted in the waiver of all of Main Line's issues on appeal. Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc. (Pa. Cmwlth., Nos. 953-958, 1434, 1456, 1460, 1549, 1573, 1574 C.D. 2015, filed Nov. 17, 2015) (single judge op.) (Main Line Gardens I), rev'd by Main Line Gardens II. Therefore, a single judge of this Court dismissed Main Line's appeals. Id. After this Court denied Main Line's application for reargument, Main Line filed a petition for allowance of appeal, which the Supreme Court granted.[8]

Ultimately, the Supreme Court held that this Court erred in dismissing Main Line's appeals where: (1) Pa. R.C.P. No. 227.1(b)(2) does not *require* supporting briefs or the presentation of argument when post-trial motions are filed; rather, the trial court has discretion to request that the parties file briefs if it requires further advocacy on the issues; (2) as a result, the trial court had discretion to overlook Main Line's failure to file a brief in support of its post-trial motions; and, (3) the trial court ruled on the merits of Main Line's post-trial motions based on the fact that the parties previously briefed the issues raised in the post-trial motions, and the trial court heard argument on those issues. Main Line Gardens II. As such, the

---

[7] DiSalle v. P.G. Publ'g Co., 544 A.2d 1345 (Pa. Super. 1988), appeal denied, 557 A.2d 724 (Pa. 1989), abrogated by Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc., 155 A.3d 39 (Pa. 2017).

[8] Bd. of Supervisors of Willistown Twp. v. Main Line Gardens, Inc., 138 A.3d 609 (Pa. 2016) (granting allowance of appeal on the following issue: "[U]nder Rule 227.1 of the Pennsylvania Rules of Civil Procedure, where a trial court rules on post-trial motions and expresses reliance on previously filed briefs that fully argue the post-trial issues, may an appellate court nevertheless dismiss the appeal for failure to file an accompanying brief?").

Supreme Court remanded to this Court for a review of the merits of Main Line's issues on appeal.  Id.

On remand, this Court directed the parties to file briefs on the merits of Main Line's appeals, which they did.  Main Line's consolidated appeals are now before us for disposition.[9]

---

[9] After the parties filed briefs on the merits, Main Line filed an application to file a supplemental brief to include reference to what it referred to as a dispositive decision rendered after Main Line filed its briefs.  In particular, Main Line referenced this Court's decision in Borough of West Conshohocken v. Soppick, 164 A.3d 555 (Pa. Cmwlth. 2017) (borough's enforcement action against landowners was premature where borough initiated action before there was a final determination that landowners violated the zoning ordinance as landowners had not exhausted their appeal rights).  Through its application, Main Line essentially conceded it did not raise this issue below, but it asserted the issue was not waived because it was jurisdictional in nature.

The Township filed an answer in which it asserted this Court's decision in Soppick was not an enunciation of new law, but rather a reaffirmation of this Court's prior holdings.  See Woll v. Monaghan Twp., 948 A.2d 933 (Pa. Cmwlth. 2008); Borough of Bradford Woods v. Platts, 799 A.2d 984 (Pa. Cmwlth. 2002).  Here, the Township argued, in the enforcement proceedings filed by the Township against Main Line that were conducted before the ZHB, the magisterial district court, and then the trial court sitting *de novo*, Main Line did not claim the enforcement proceedings initiated by the Township were premature.  Thus, the Township asserted, Main Line waived this issue.

In addition, the Township argued, Main Line's contention that the issue was jurisdictional (and therefore non-waivable) was incorrect as a matter of law.  To that end, the Township asserted: jurisdiction over an appeal of a zoning officer's enforcement notice is vested in the ZHB pursuant to Sections 616.1 and 909.1(a)(3) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §§10616.1 and 10909.1(a)(3); jurisdiction over subsequent enforcement proceedings under Section 617.2 of the MPC, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10617.2, is vested in magisterial district courts pursuant to Section 617.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, as amended, 53 P.S. §10617.1, and 42 Pa. C.S. §1515(a)(7); and, jurisdiction over a *de novo* appeal from a judgment entered by a magisterial district court is vested in the courts of common pleas pursuant to 42 Pa. C.S. §932 and Pa.R.C.P. M.D.J. Nos. 1002(A) and 1007.  The Township argued that the procedural history of this case followed that path, and there was no colorable argument that any of the proceedings below were extra-jurisdictional.

## II. Issues

On appeal,[10] Main Line raises three issues. First, it argues the trial court erred in finding it waived the issue of *res judicata* where: (a) the issue first arose after the pleadings were closed; (b) Main Line raised the issue in multiple pre-trial filings; and, (c) the trial court stated during trial, "I think that's sufficient to raise the question of collateral estoppel as well as technical *res judicata*, and I'll hear your arguments this afternoon." R.R. at 489a. Main Line also asserts the trial court erred in its Pa. R.A.P. 1925(a) Opinion by modifying the final, unappealed order issued by the arbitration panel in an identical case, between the same parties, which was reduced to judgment and the judgment paid. Additionally, Main Line contends the trial court erred in awarding attorney fees to the Township where the only evidence was that the fees claimed were not allocated between those matters in which Main Line prevailed before the ZHB and the trial court, and those matters that were the subject of the enforcement citation, leading to this appeal.

### III. Discussion
### A. *Res Judicata*
### 1. Contentions

---

Ultimately, this Court denied Main Line's application to file a supplemental brief. Nevertheless, in their oral arguments to this Court, the parties repeated the assertions made in their papers.

We agree with the Township's arguments. Based on the authority cited by the Township, we hold that the decision in Soppick was not an enunciation of new law, and that Main Line waived the issue of premature enforcement by failing to raise it at any time before the current appeal to this Court. Furthermore, based upon the authority cited by the Township, we hold the issue of premature enforcement is not a non-waivable matter of jurisdiction (authority of the tribunal to act).

[10] Our review of a non-jury trial is limited to determining whether competent evidence supports the trial court's findings and whether the trial court committed an error of law. Swift v. Dep't of Transp., 937 A.2d 1162 (Pa. Cmwlth. 2007). This Court cannot reweigh evidence or substitute its judgment for that of the fact-finder. Id.

10

Main Line first argues the trial court erred in determining Main Line waived the defense of *res judicata* because the defense did not arise until: (1) after the pleadings were closed; (2) the arbitration was complete; and, (3) the arbitrators' award in one of the identical cases was not timely appealed and became final.

Main Line contends the trial court deemed the issue of *res judicata* waived based on the fact that Main Line did not plead *res judicata* as new matter despite the fact that, at the outset of trial, the trial court permitted the Township to amend its six remaining complaints in an effort to avoid the impact of *res judicata*, as raised by Main Line in numerous other filings. Further, Main Line asserts, the trial court stated that if the Township was faced with a pleading of *res judicata*, as opposed to a series of motions, it could have taken appropriate steps to separate the causes of action. Main Line argues the trial court's decision was an abuse of discretion and an error of law.

To that end, Main Line maintains, the issue of *res judicata* was not waived because: (1) it first arose after pleadings were closed; (2) it was before the trial court on a motion and in numerous filings; (3) the trial judge stated on the record, at trial, that the issue was before him; (4) the Township did attempt to take steps to separate its causes of action; and, (5) there was no step that could have altered the fact that the Township did not appeal the arbitrators' decision in the seventh case.

In that seventh trial court case, Main Line argues, there was an award of damages for the sale by Main Line of mulch to a customer who did not use it for

11

landscaping, but rather transported it to another county where it was made into higher quality mulch. Main Line contends the dates in the original 7 cases before the magisterial district judge were 84 successive days beginning on May 23, 2012. It asserts that no imaginative pleading could change the dates for the remaining 6 cases as the final judgement in the seventh case dealt with all 84 of those days.

Main Line further argues the issue of *res judicata* was discussed extensively at trial, with the trial court actively participating. Main Line acknowledges that Pa. R.C.P. No. 1030 requires *res judicata* to be raised in new matter, in order to give the Township an opportunity to reply. However, it asserts, at the time it filed its answers, *res judicata* was not a proper affirmative defense because the arbitrations had not yet produced the single unappealed decision in favor of the Township, which later became final. Main Line contends the trial court permitted the Township to amend its complaints in court at the outset of trial; however, the Township never filed its amended complaints and they were never docketed. Thus, Main Line maintains the time for filing a responsive pleading, with new matter, never began to run. Nevertheless, Main Line asserts, the trial court permitted the case to be tried on the basis of the unfiled amended complaints, and by its words on the record, causing Main Line to believe it did not need to delay trial to file answers and new matter to the six proposed amended complaints.

Main Line further argues the trial court's finding that the issue of *res judicata* was waived is fundamentally unfair. If the trial court or the Township's counsel stated, at or before trial, that the defense was waived, Main Line contends, it would have asked to recess the trial in order to timely file new matter. Main Line

12

asserts the trial court *affirmatively* caused the parties to believe the issue was before the trial court.

Main Line also argues the Township waived its right to assert that Main Line waived this issue where the Township: (1) was granted leave to amend its complaints to attempt to address the issue of *res judicata* raised by Main Line in its summary judgment motions; (2) failed to raise the issue of waiver at trial; and, (3) argued the issue extensively at trial.

Main Line contends that matters are pled in order to avoid trial by ambush. Main Line argues that, if anyone was ambushed, it was Main Line. It asserts the Township was aware of the defense and tried to amend its six remaining complaints to counter the defense. Unfortunately, Main Line asserts, no amount of amendment could avoid the fact that there was a final, unappealed and satisfied judgment dealing with the mulch violations in the exact time period as the six outstanding complaints.

As to the merits, Main Line argues it should have prevailed on the basis of *res judicata*. It asserts that, under the doctrine of technical *res judicata*, often referred to as claim preclusion, when a final judgment on the merits exists, a future suit between the parties on the same cause of action is barred. Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.), 776 A.2d 362 (Pa. Cmwlth. 2001). Main Line contends that, in order for technical *res judicata* to apply, there must be: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the person and parties to the action; and, (4) identity of the quality or capacity of

the parties suing or being sued. Id. It contends technical *res judicata* may bar claims that were actually litigated as well as claims that should have been litigated. Id. Generally, it argues, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.

Here, Main Line maintains, the identity of the thing sued for is present as all seven original complaints were identical, and the proposed amended complaints made the same claims, against the same entities, for days within the same period as the original complaints. Main Line further argues the causes of action are identical as all seven original complaints were identical and the proposed amended complaints made the same exact claims for fines and attorney fees arising out of mulch sales, which were identical, on identical dates. Main Line also contends the parties in all seven cases are identical. Further, it asserts, the identity in the quality or capacity of the parties is present as all the parties were sued in all seven cases in the same capacity. Additionally, it contends all seven cases address the Township's claims against Main Line for mulch-related violations within the time period encompassed by the final judgment.

Main Line further points out that the Township has chosen, as the foundation for its argument that *res judicata* does not bar its claims, a contention that the six complaints referred to separate 12-day periods that differ from the period in the complaint that is the subject of a final judgment. Main Line asserts that the Township's argument fails because: (1) the original period in all seven identical complaints was the same; (2) all seven complaints were identical; (3) although the Township was permitted to file amended complaints, it never did so; and, (4) even

14

if the Township filed its proposed amended complaints, the periods referenced in those complaints all fell between May 23, 2012 to August 14, 2013.

## 2. Analysis

In its Pa. R.A.P. 1925(a) Opinion, the trial court indicated that its prior determination (in the first of its six orders issuing non-jury verdicts against Main Line) that Main Line did not properly assert its *res judicata* defense, was erroneous. Tr. Ct., Slip Op., 8/31/15, at 3; see also Main Line Gardens II.  As a result, the trial court proceeded to address the *res judicata* issue on the merits.  Tr. Ct., Slip Op., at 3.  Because the trial court acknowledged that it erred in determining Main Line did not avail itself of the defense of *res judicata*, and because the trial court addressed the *res judicata* issue on the merits, it is unnecessary to address Main Line's extensive argument that the trial court erred in its initial determination that Main Line waived its *res judicata* defense.  Rather, like the trial court, we address the viability of Main Line's *res judicata* defense on the merits.

"[T]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata, which 'prevents the relitigation of claims and issues in subsequent proceedings.'"  Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.), 960 A.2d 949, 954 (Pa. Cmwlth. 2008) (quoting Henion, 776 A.2d at 365).

> Under the doctrine of technical res judicata, often referred to as claim preclusion, 'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.' [Henion, 776 A.2d at 365]. In order for technical res judicata to apply, there must be: '(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties

15

to the action; and (4) identity of the quality or capacity of the parties suing or sued.' Id. at 366. Technical res judicata may be applied to bar 'claims that were actually litigated as well as those matters that should have been litigated.' Id. [(emphasis omitted)]. 'Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.' Id.

The doctrine of collateral estoppel, often referred to as issue preclusion, 'is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously litigated.' Pucci v. Workers' Comp[.] Appeal B[d.] (Woodville State Hosp.), 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998).

Weney, 960 A.2d at 954.

Further, "where a subsequent action is brought to recover damages from injuries during a different period of time, the 'thing sued for' generally is not the same, and claim preclusion does not apply. Thus an unfavorable determination on a claim by homeowners that a municipal authority had not provided wholesome water from 1962 to 1964 did not, in itself, preclude a subsequent action challenging the quality of the water delivered in 1965. Callery [v. Mun. Auth. of Twp. of Blythe, 243 A.2d 385 (Pa. 1968)]." Carroll Twp. Auth. v. Mun. Auth. of City of Monongahela, 603 A.2d 243, 249 (Pa. Cmwlth. 1992) (footnote omitted).

Here, the trial court determined that "the defense [of *res judicata*] was not valid because "[i]n these cases, each of the seven (7) law suits covered a different period of time and, therefore, the requisite identities are not present." Tr. Ct., Slip Op., at 3. No error is apparent in the trial court's determination.

16

More particularly, the Township initiated these matters through the filing of seven civil complaints in magisterial district court, seeking to recover $12,000 in fines ($500 per day and per violation for two zoning ordinance violations)[11] for seven discrete 12-day periods in 2012: May 23-June 3; June 4-15; June 16-27; June 28-July 9; July 10-July 21; July 22-August 2; and, August 3-August 14. R.R. at 604a-24a. After a hearing, the magisterial district court issued separate notices of judgment against Main Line in the amount of $6,143 on each of the seven complaints for a total of $43,001. Main Line appealed the magisterial district court judgments to the trial court.

Thereafter, the Township filed complaints against Main Line in each of the seven actions. R.R. at 59a-181a. Through each complaint, the Township sought the imposition of *per diem* fines from May 23, 2012 through August 14, 2013. Id.; see supra n.2.

After civil arbitrations in the seven cases, an arbitration panel entered an award in favor of the Township in one action in the amount of $21,274.67,[12] and in favor of Main Line in the remaining six actions. R.R. at 182a-88a. The Township appealed the six arbitration awards entered against it and in favor of Main Line to the trial court *de novo*. R.R. at 192a-97a; see Pa. R.C.P. No. 1311(a) (on appeal from compulsory arbitration "[t]he trial shall be de novo.") (emphasis added); Cellutron Prods. Corp. v. Stewart, 300 A.2d 900, 901 (Pa. Super. 1972) ("Where …

---

[11] $12,000 is the statutory cap for civil claims in magisterial district courts. See 42 Pa. C.S. §1515.

[12] The arbitration panel's award in favor of the Township was in Case Number 2013-05036-CV, R.R. at 182, which corresponds to Docket No. CV-328-12 in the magisterial district court, and which covered the period from August 3 through August 14, 2012. Certified Record, Item #9, Ex. B at 13.

there is a timely and proper appeal by one of the parties, … the arbitrator's award loses its finality and the case is heard anew.").

At the outset of the non-jury trial, the Township moved to amend its complaints in the six actions so that each complaint corresponded to the discrete 12-day period set forth in the Township's complaints filed in the magisterial district court. R.R. at 405a. Main Line objected on the ground that the proposed amendments were untimely and that any of the claims in the complaints were barred by *res judicata*. R.R. at 406a. In response, the trial court noted the proposed amendments would actually shorten the period of violations at issue in the original complaints; as a result, it asked Main Line's counsel how Main Line would suffer prejudice as a result of the proposed amendments. Id. Main Line's counsel responded: "We're not [prejudiced], your Honor." R.R. at 407a (emphasis added). As a result, the trial court granted the Township's motion to amend its complaints. Id. No error or abuse of discretion is apparent in the trial court's decision to permit the amendments.

To that end, as our Superior Court previously explained:

> When reviewing a trial court's ruling on a party's petition to amend we must bear in mind that the trial court is granted broad discretion in evaluating amendment petitions. Newcomer v. Civil Service Comm'n of Fairchance Borough, [515 A.2d 108, 111 (Pa. Cmwlth. 1986)]. The sound discretion of the trial court will not be disturbed on appeal absent a showing of an abuse of that discretion. Ecksel v. Orleans Constr. Co., [519 A.2d 1021, 1027 (Pa. Super. 1987)]. …
>
> Pennsylvania Rule of Civil Procedure 1033[(a)] provides that:

18

> [a] party, either by filed consent of the adverse party or by leave of court, may *at any time* change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

[Pa. R.C.P. No. 1033] (emphasis added). This rule has repeatedly been interpreted as requiring the liberal evaluation of amendment requests, see [Pa. R.C.P. No.] 1262, in an effort to secure a determination of cases based upon their merits, Gallo v. Yamaha Motor Corp., U.S.A., [484 A.2d 148, 150 (Pa. Super. 1984)], rather than based upon a mere technicality. Thus, Rule 1033 has been interpreted to permit amendments to pleadings at any time, including before, during and after trial. Winterhalter v. West Penn Power Co., [512 A.2d 1187, 1189 (Pa. Super. 1986)].

Despite this liberal amendment policy, Pennsylvania appellate courts have repeatedly ruled that an amendment will not be permitted where it is against a positive rule of law, or where the amendment will surprise or prejudice the opposing party. Robinson Protective Alarm Co. v. Bolger & Picker, [516 A.2d 299, 302 n.6 (Pa. 1986)]; Sunman v. Goodge, [539 A.2d 826, 828 (Pa. Super. 1988)]; Ecksel [v. Orleans Constr. Corp.], 519 A.2d 1021, 1027 (Pa. Super. 1987). …

[T]he lateness of a proposed amendment is only to be considered 'insofar as it presents a question of prejudice to the opposing party.' Gutierrez v. [Pa. Gas & Water Co., 507 A.2d 1230, 1232 (Pa. Super. 1986)]. It has been consistently held that 'unreasonable delay', by itself, is an insufficient ground upon which to base a denial of an amendment motion. R.P. Clarke Personnel, Inc. v. Commonwealth Nat'l Bank, [559 A.2d 560, 566 (Pa. Super. 1989)]. See Carpitella by Carpitella v.

19

Consolidated Rail Corp., [533 A.2d 762, 764 (Pa. Super. 1987)] (party must establish more than undue delay before liberal policy of amendment entrenched in Pennsylvania case law will be overcome).

The type of prejudice which is required to overcome Pennsylvania's liberal amendment policy has been defined thusly:

> 'All amendments have this in common: they are offered later in time than the pleading which they seek to amend. If the amendment contains allegations which would have been allowed inclusion in the original pleading (the usual case), then the question of prejudice is presented by the time at which it is offered rather than by the substance of what is offered. The possible prejudice, in other words, must stem from the fact that the new allegations are offered late rather than in the original pleading, and not from the fact that the opponent may lose his case on the merits if the pleading is allowed ….'

Bata v. Central-Penn Nat'l Bank. of Philadelphia, [293 A.2d 343, 357 (Pa. 1972)], (quoting Fleming, James, Jr., Civil Procedure 158 (1965)). … [T]he prejudice inquiry is limited to an evaluation of whether undue prejudice exists. Bata, [293 A.2d at 357]; Winterhalter, [512 A.2d at 1189]. …

We reiterate that a lengthy delay, without more, is not a sufficient basis for rejecting a petition to amend. This court has previously held that a party must establish more than undue delay to overcome Pennsylvania's liberal amendment policy. Carpitella, [533 A.2d at 764]; Gallo, [484 A.2d at 150]. It has similarly been held that the denial of a motion to amend based solely upon unreasonable delay constitutes an abuse of discretion. Stouffer v. [Dep't of Transp., 562 A.2d 922, 925 (Pa. Cmwlth. 1989), overruled on other grounds by Solonoski by Solonoski v. Yuhas, 657 A.2d 137 (Pa. Cmwlth. 1995) (en banc)].

20

Horowitz v. Universal Underwriters Ins. Co., 580 A.2d 395, 398-99, 400 (Pa. Super. 1990) (emphasis by underline added).

Before the trial court here, Main Line made no argument that the Township's proposed amendments to its complaints to reflect that each of the six complaints corresponded to the discrete 12-day periods set forth in the Township's complaints filed in the magisterial district court violated a positive rule of law. Further, as stated above, Main Line conceded it would not suffer prejudice as a result of the amendments. R.R. at 407a. Indeed, Main Line was aware of the claims against it, the different time periods, and the damages sought, particularly in light of the procedural history of all seven of the original matters for which enforcement was sought. Under these circumstances, no abuse of discretion is apparent in the trial court's decision to permit the Township to amend its six complaints to reflect that each complaint pertained to the discrete 12-day periods set forth in the Township's complaints filed in the magisterial district court.

Moreover, although Main Line argues that the Township did not *actually file* its amended complaints after the trial court granted it leave to amend at the outset of trial, Main Line did not raise this issue in its post-trial motions or in its concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). R.R. at 541a-43a, 565a-66a.[13] Therefore, this issue is waived. Pa. R.C.P. No. 227.1(b)(2); Diener Brick Co. v. Mastro Masonry Contractor, 885 A.2d 1034, 1039 (Pa. Super. 2005) (issues not raised in post-trial motions are waived for purposes of appeal); see also Pa. R.A.P. 1925(b)(4)(vii); Commonwealth v. Hill, 16

_____

[13] Indeed, contrary to its current assertion, in its Rule 1925(b) Statement, Main Line indicated that the Township did, in fact, file its amended complaints. R.R. at 566a.

21

A.3d 484 (Pa. 2011) (any issues not raised in Rule 1925(b) Statement will be deemed waived).

In turn, because the Township's amended complaints each related to a different time period in which Main Line violated the zoning ordinance, the "thing sued for" is not the same, and *res judicata* does not apply. Callery; Carroll Twp. Auth. As such, we discern no error in the trial court's determination that *res judicata* does not bar the Township's claims here.

In addition, we reject Main Line's conclusory assertion that the single, unappealed arbitration panel award entered in favor of the Township was a judgment for the entire 84-day period from May 23, 2012, through August 14, 2012. To that end, despite generally asserting that the single, unappealed arbitration award covered the entire 84-day violation period, Main Line, which bore the burden of proving *res judicata* applied, see, e.g., Interim House, Inc. v. Philadelphia Zoning Board of Adjustment, 387 A.2d 511 (Pa. Cmwlth. 1978), does not support this assertion with citation to the record or legal authority. And, our independent review of the certified record belies Main Line's assertion.

More particularly, prior to arbitration, the Township filed a Pre-Arbitration Memorandum in the seven suits through which it requested the following relief: "**$43,001.00** ($500 per diem fine for 84 days from May 23, 2012 through August 14, 2012) [and] **$105,921.68** (reasonable attorney's fees)" for a "**Total**: **$148,922.68**." Certified Record (C.R.), Item #10, Ex. C. at 4 (emphasis in original) (footnote omitted). The Pre-Arbitration Memorandum further states: "There are seven different matters for violation periods of 12 days each. The total award should

22

be divided [into] seven equal parts of **$21,274.67.**" Id. (bolding in original). Ultimately, the arbitration panel entered an award in favor of the Township *in one action in the amount of $21,274.67* (which directly corresponds to the amount the Township sought in each one of the seven actions), and in favor of Main Line in the remaining six actions. Thus, the trial court reasonably concluded that the arbitration panel's single award in favor of the Township pertained to only one of the seven discrete 12-day violation periods. R.R. at 182a; see also R.R. at 426a (testimony of Township Manager).

This conclusion is consistent with the fact that the arbitration panel's jurisdiction was limited to damage claims of $50,000 or less. See C.C.R.C.P. 1301.1(a). As such, if, as Main Line contends, the Township's complaints pertained to the entire 84-day enforcement period, the damages sought would have exceeded the arbitration panel's jurisdictional limit. Thus, although the Township was precluded from challenging the arbitrators' award in the single case from which no appeal was taken, see, e.g., Dyer v. Travelers, 572 A.2d 762 (Pa. Super. 1990), the Township was not precluded from challenging the remaining six arbitration awards entered in favor of Main Line, which the Township timely appealed, and which, as discussed above, related to discrete time periods for the violations.

For all of the foregoing reasons, Main Line's *res judicata* claim lacks merit.

### B. Alleged Modification of Arbitrators' Award
### 1. Contentions

Main Line next argues the trial court's Pa. R.A.P. 1925(a) Opinion is erroneous. Specifically, Main Line reiterates its assertion that the seventh case was

final when the Township did not appeal the arbitration panel's decision entered in favor of the Township. Main Line contends the trial court revisited that final case and decided it could read the minds of the arbitrators and modify the final decision. Main Line maintains there are two reasons the trial court could not modify that arbitration award. First, Main Line argues, the trial court did not have jurisdiction to alter a final decision. Main Line asserts the case was final, the award was reduced to judgment, and it paid the judgment. In fact, Main Line notes, it did not appeal, the Township did not appeal, and the trial court lacked jurisdiction to effectively appeal the decision *nunc pro tunc* on the Township's behalf and render a decision on that appeal. Further, Main Line contends there is only one way the Rules of Civil Procedure permit a trial court to modify an arbitration panel's decision, through a *de novo* trial after a timely appeal is filed.

## 2. Analysis

While not entirely clear, it appears that Main Line's argument on this point stems from the statements in the following excerpt of the trial court's Pa. R.A.P. 1925(a) Opinion:

> From the amount of the award it is clear that the [b]oard of [a]rbitrators considered only the first of the seven (7) twelve (12) day periods and imposed a fine and allowable attorneys' fees and costs for that period of time.
> …
>
> [A]s noted above, each of the seven (7) cases covered a distinct and separate period of time and, therefore, the doctrine of *res judicata* does not apply. It is true that in their original formulations each of the seven (7) complaints [filed by the Township] sought the imposition of fines for all seven (7) twelve (12) day periods of time. However, the decision of the [arbitrators] in the first (1ˢᵗ) of the cases cannot be viewed as having made an award

24

> for any of those time periods except the first (1ˢᵗ) one.
> Thereafter, the amendments to the other complaints acted
> to preclude [the Township] from recovering more than
> once for any one (1) specific period of time. Thus, the
> causes of action were not identical and the doctrine of *res
> judicata* is inapplicable.

Tr. Ct., Slip Op., at 2-4 (emphasis added).

Contrary to Main Line's assertions, the trial court did not alter the final, unappealed arbitration award entered in favor of the Township. Rather, it merely noted the Township sought the imposition of fines, attorney fees, and costs for seven discrete 12-day periods, and the arbitration panel's award issued in favor of the Township only related to one of those periods. As explained above, the trial court's determination that the arbitration panel's award in favor of the Township in one of the seven cases pertained to only one of the seven separate and discrete 12-day violation periods is supported by the record.

In short, the arbitration panel issued seven separate awards, one in favor of the Township and six in favor of Main Line. No error is apparent in the trial court's characterization of the arbitration panel's awards as relating to seven discrete periods, or, as discussed above, its determination that the single, unappealed arbitration award entered in favor of the Township did not bar the Township's remaining six suits on *res judicata* grounds.

### C. Attorney Fees
### 1. Contentions

As a final issue, Main Line argues the trial court's award of attorney fees was based on speculation rather than evidence. More specifically, it asserts the

trial court committed three errors in its award of attorney fees. First, Main Line contends, the Township Solicitor argued that the Township could recover attorney fees, following an enforcement notice, even on matters in which it did not prevail. Main Line maintains there were 16 items in the original enforcement notice. However, it argues, there was 1 issue in the enforcement citation and the 7 complaints. Main Line asserts the evidence presented sought to recover all fees incurred for all 16 matters in the enforcement notice, even though only one matter was the subject of the seven enforcement citations.

Main Line further argues that the Township only prevailed on 2 of the 16 issues. With no evidence to break down the invoices by issue, Main Line asserts, the trial court either awarded attorney fees as to a matter in which the Township did not prevail or it guessed at the amount it awarded, both of which were error.

Main Line acknowledges that attorney fees are authorized by Section 617.2(a) of the Pennsylvania Municipalities Planning Code (MPC).[14] It contends that provision authorizes attorney fees against persons who violate or permit violations of a zoning ordinance. Main Line argues nothing in that statutory provision authorizes a municipality to recover attorney fees, where the person was found not to have violated the zoning ordinance. Main Line asserts that provision does not state that a municipality may recover its attorney fees merely because it issues an enforcement notice; rather, there must be a finding of a violation.

---

[14] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, as amended, 53 P.S. §10617.2(a).

Main Line contends the trial court committed a second error by basing its conclusion on speculation rather than evidence. It argues the attorney fee invoices the Township submitted begin right after the Township issued the zoning enforcement notice containing the 16 alleged violations. Main Line asserts only one of those alleged violations related to mulch and became the subject of the citations. It maintains the complaints before the trial court did not address any of the other 15 issues. Main Line argues the bill for attorney fees does not distinguish between these 16 issues or provide any guidance as to what portion of the bill relates to the wood chip issue. Main Line asserts an award cannot be based on speculation or conjecture; rather, it must be based on evidence. See Smith v. Bell Tel. Co. of Pa., 153 A.2d 477 (Pa. 1959).

Main Line argues there is no evidence here as to what portion of the Township Solicitor's bills relate to the wood chip issue. It asserts a reasonable mind could do nothing more than guess as to how much the Township paid in attorney fees related to the wood chip issue alone. To that end, Main Line contends the Township Solicitor admitted the invoices were not itemized in a way that the trial court could discern which portion of the invoices related to the wood chip issue. See R.R. at 478a-86a. On the basis of this testimony, Main Line argues, the trial court deemed itself able to discern the amount billed to the Township relating to the wood chip issue and to classify damages into the distinct 12-day periods referred to in the Township's six amended complaints.

Main Line contends the trial court's third error was ignoring the fact that the amount of attorney fees the Township incurred for wood chip-related

27

litigation was already established by the unappealed final decision in the seventh case issued by the arbitration panel. It argues the decision in the seventh case covered the wood chip issue in a period that was included in all of the dates in the other six proposed amended complaints. Main Line asserts it paid the judgment in that seventh case, thus satisfying the obligation.

## 2. Analysis

Responding to Main Line's argument that the trial court erred in awarding attorney fees where the evidence the Township presented commingled allowable fees with those that were not recoverable, the trial court stated that, based on the evidence presented, it was able to make a determination as to attorney fees with reasonable accuracy. No error is apparent in that determination.

Pursuant to Section 617.2(a) of the MPC:

Any person, partnership or corporation who or which has violated or permitted the violation of the provisions of any zoning ordinance enacted under this act or prior enabling laws shall, upon being found liable therefor in a civil enforcement proceeding commenced by a municipality, pay a judgment of not more than $500 plus all court costs, including reasonable attorney fees incurred by a municipality as a result thereof. …

53 P.S. §10617.2(a) (emphasis added). "[A]n award of costs and attorney fees pursuant to Section 617.2 of the MPC is not limited to costs and fees incurred as a result of the action before the [magisterial district judge,] but includes all costs and attorney fees incurred as a result of the violation, which may encompass appeals from the enforcement notice." Borough of Bradford Woods, 799 A.2d at 991.

28

"In assessing the reasonableness of attorney's fees and costs it is necessary to look at the amount of work performed, the character of services rendered, the difficulty of the problems involved, and the professional skill and standing of the attorney in the profession." Twp. of S. Whitehall v. Karoly, 891 A.2d 780, 784 (Pa. Cmwlth. 2006) (citing In re Trust Estate of LaRocca, 246 A.2d 337, 340 (Pa. 1968)). Further, in LaRocca, the Pennsylvania Supreme Court stated:

> The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error. The allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error.

Id. at 340.

In addition, "[o]nce the prevailing party has established the relatedness of the claims it is the opposing party's burden to establish a basis for segregating the hours spent on the successful and unsuccessful claims." Karoly, 891 A.2d at 786 (quoting Okot v. Conicelli, 180 F. Supp. 2d 238 (D. Me. 2002)) (emphasis added).

Here, our review of the record reveals that the Township Solicitor testified regarding the amount of work performed, the character of the services rendered, the difficulty of the problems involved, and his professional skill and standing in the profession. R.R. at 470a-79a. Further, he provided sufficiently

detailed testimony concerning the amount of attorney fees the Township incurred as a result of the enforcement proceedings as those fees pertained to Main Line's zoning ordinance violations relating to the dumping, storing, transferring, or processing of tree waste in the form of wood chips. R.R. at 470a-79a, 484a-86a. Additionally, the Township presented the Township Solicitor's invoices. C.R., Tr. Ct., Non-Jury Trial, 11/3/14, Ex. P-8. Those invoices specifically excluded the attorney fees awarded by the arbitration panel in the first of the seven cases before the arbitration panel from which no appeal was taken. Id.

Although Main Line asserts the invoices are not sufficiently detailed to indicate more precisely which invoices relate to the wood chip issue, the Township Solicitor testified "the primary issue was the storage of wood chips, the collection of wood chips and the sending wood chips off in tractor trailers." R.R. at 485a. The Township Solicitor further explained, "[t]here were, as indicated in previous testimony, 16 different allegations [in the Township's enforcement notice], but I think that was, most of them were peripheral to the wood chip issue." R.R. at 172a. He also stated that, after the ZHB's decision upholding the enforcement notice in May 2012, "almost a hundred percent of the fees were associated with the wood chip issue." R.R. at 485a. Ultimately, the trial court awarded *about half (57%) of the total attorney fees* requested by the Township as reflected in the Township Solicitor's invoices.

Further, once the Township established the relatedness of its claims, Main Line bore the burden to establish a basis for segregating the hours spent on successful and unsuccessful claims. Karoly. Here, Main Line made no attempt to

30

segregate the hours spent on the wood chip issue from any of the other issues involved in the enforcement proceedings on which the Township did not prevail.

Finally, we reject Main Line's contention that the trial court ignored the fact that the amount of attorney fees the Township incurred for wood chip-related litigation was already established by the unappealed arbitration panel decision in favor of the Township as that decision covered the issue in a period that encompassed all the dates in the other six amended complaints. More particularly, in light of our analysis above, that the arbitration panel's decision in favor of the Township related to only one of seven discrete periods, this claim fails. As such, no error is apparent in the trial court's award of attorney fees to the Township.

Based on the foregoing, we affirm.


_____
ROBERT SIMPSON, Judge

31

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Board of Supervisors | : | |
| of Willistown Township | : | No. 1434 C.D. 2015 |
| | : | 1456 C.D. 2015 |
| v. | : | 1460 C.D. 2015 |
| | : | 1549 C.D. 2015 |
| Main Line Gardens, Inc. | : | 1573 C.D. 2015 |
| and Coffman Associates, LLC | : | 1574 C.D. 2015 |
| Appellants | : | |

## **O R D E R**

**AND NOW**, this 9th day of May, 2018, the orders of the Court of Common Pleas of Chester County are **AFFIRMED**.


_____
ROBERT SIMPSON, Judge